**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND**

**CRIMINAL ACTION NO. 14-20-DLB-EBA**

**UNITED STATES OF AMERICA**                                                **PLAINTIFF**

**MEMORANDUM OPINION AND ORDER**

**JOHN MADDUX, JR., et al.**                                         **DEFENDANTS**

**\*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\***

Defendants John Maddux, Jr. and Christina Carman ask the Court to dismiss various counts in the Indictment because, they argue, failure to file Jenkins Act reports cannot support a conviction for mail fraud. (Doc. # 116). The matter is fully briefed and ripe for review. (Docs. # 116, 133, and 162).[1] In their briefs, Defendants emphasize, *arguendo*, that they are only guilty of failure to comply with a simple regulatory requirement. This ignores, however, that their regulatory noncompliance amounted to a material omission that was part of a larger scheme in which they are accused of enriching themselves while allegedly defrauding federal, state, and local governments. Accordingly, Defendants' Motion to Dismiss (Doc. # 116) is **denied**.

**I.**      **Factual Background**

Defendants Maddux and Carman were indicted on November 13, 2014 for allegedly engaging in multiple domestic and international conspiracies in which they imported and distributed tens of millions of dollars in untaxed cigarettes. The eighty-three (83) page

---

1) Co-defendant Michael Smith has joined in Defendants' Motion to Dismiss. (Doc. # 128).

Indictment contains thirty-four (34) counts, and names Maddux and Carman in thirty-four (34) and twenty-one (21) counts, respectively.  Defendants have been charged with violations of 18 U.S.C. § 1349 (conspiracy to commit mail or wire fraud), 18 U.S.C. §§ 1956(h) and § 1957  (money laundering and conspiracy to commit money laundering), and 18 U.S.C. § 371 (general conspiracy against the United States).  The conduct described in the Indictment began as early as January 2003 and continued until 2014.  Defendants' domestic associates and co-conspirators had enterprises allegedly stretching from New York to California; the international defendants operated in Israel, Kyrgyzstan, Moldova, and Ukraine.

Defendants' alleged conspiracies operated by enabling the evasion of federal, state, and local cigarette excise taxes.  By secretly importing cigarettes, Defendants and their international suppliers were able to avoid the federal excise tax on imported cigarettes.  Defendants also failed to file the required Jenkins Act reports, further defrauding federal, state, and local governments by concealing the identities of the consumers who owed taxes on cigarettes shipped across state lines.

The amount of tax imposed on cigarettes by state governments varies widely.  For example, highest state rate is $4.35 in New York; the lowest is $0.17 in Missouri.  *See* CENTERS FOR DISEASE CONTROL AND PREVENTION, STATE TOBACCO ACTIVITIES TRACKING AND EVALUATION SYSTEM: MAP OF EXCISE TAX RATES ON CIGARETTES (2015), *available at* http://www.cdc.gov/statesystem/excisetax.html (last visited Sept. 29, 2015).  By shipping cigarettes from low-tax states to high-tax ones, Defendants could provide cigarettes at prices substantially below those of the local retailers in the high-tax states.  This arbitrage, however, came at the expense of the high-tax states' coffers.

In order to prevent the circumvention of these cigarette tax laws, Congress enacted the Jenkins Act in 1949 (and significantly enhanced it in 2010). The Jenkins Act requires interstate shippers of cigarettes to report the name, address, and other identifying information of the person receiving the cigarettes, as well as the quantity and brand of the cigarettes shipped. This enables state governments to collect the taxes they are owed and prevents evasion of state cigarette tax laws.

Defendants are accused of intentionally failing to file these Jenkins Act reports, which allowed them to sell cigarettes at greatly reduced prices relative to law-abiding retailers. The failure to file the reports concealed the identity of the purchasers and the quantity of the sales, preventing state governments from collecting the taxes they were legally owed.

While Defendants did not owe the taxes due, their concealment of the interstate cigarette transactions prevented the collection of the taxes owed by their customers, reducing the effective price of the transaction to artificially depressed levels. The difference in the price was the tax that would have been paid had the governments been able to collect the tax. Essentially, the Government alleges that Defendants' operation took money from the federal and state governments and redistributed it to Defendants, to their co-conspirators, and to the consumers who purchased cigarettes from the illegal enterprises.

Defendants allegedly profited handsomely selling cigarettes in this manner. A cursory glance at the forfeiture allegations in the Indictment demonstrates the profitability of Defendants' scheme. Houses, boats, hundreds of guns, a classic car collection, and sports memorabilia were seized from Defendants after their arrest. The total value of these properties is in the millions of dollars. In their briefs, Defendants claim these were

proceeds of a legitimate business that failed to comply with a simple regulatory filing requirement. In contrast, the Government argues that, far from a legitimate enterprise that failed to comply with bureaucratic red tape, Defendants' businesses were premised on secrecy and concealment in order to enable the evasion of millions of dollars of taxes.

## II. Analysis

Defendants' Motion to Dismiss raises three separate concerns. First, they claim that violations of the Jenkins Act are insufficient to support the mail fraud charges in the Indictment. Second, they ask the Court to employ the Rule of Lenity because of purported ambiguities in applying the mail fraud statute to this case. Third, they ask that the money laundering charges – which are predicated upon the illicit proceeds from the alleged mail fraud schemes – be dismissed as well. Each will discussed in turn.

### A. *Mail Fraud and the Jenkins Act*

Charges of mail fraud may be properly supported by alleging a scheme to defraud in which Defendants violated the Jenkins Act. While the Sixth Circuit has not directly addressed the issue, other circuits have unanimously held that failure to comply with the Jenkins Act may buttress a charge of mail fraud. Moreover, analogous cases from the Sixth and Ninth Circuits support the Government's Indictment. A scheme to defraud in which a defendant commits a material omission by knowingly failing to file required reports is sufficient to support a charge of mail fraud.

In order to support a charge of mail fraud,[2] the Government must prove four

---

[2] Because the analysis for mail and wire fraud is identical except for the medium in which the fraud is furthered, the two terms will be used interchangeably and what applies to one applies to the other. *See United States v. Kennedy*, 714 F.3d 951, 958 (6th Cir. 2013) (holding that the mail fraud and wire fraud statutes have essentially the same elements, except for the use of the mails versus the wires).

elements: (1) a scheme or artifice to defraud another of property; (2) a material misrepresentation or omission in furtherance of the scheme; (3) intent to defraud; and (4) the mailing of something by the defendant, or the mailing of something by another that is caused by the defendant, in furtherance of the scheme. *See United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 478 (6th Cir. 1999); *see also Neder v. United States*, 527 U.S. 1, 25 (1999) (adding the material misrepresentation or omission requirement).[3] Elements three and four are not seriously contested; elements one and two are the crux of this Motion to Dismiss. The Court finds the Indictment legally sufficient to support all four elements and, thus, a charge of mail fraud against Defendants.

### 1.    Scheme to Defraud that Deprives Another of Property

Defendants assert that their conduct is legally insufficient to support a claim of mail fraud because no person or entity was deprived of property. The Court finds, however, that the evasion of excise taxes that Defendants enabled – and from which they profited – constitutes a deprivation of property for purposes of the mail fraud statute.

The Supreme Court has declared that the right to collect excise taxes that are legally owed constitutes property in the hands of the sovereign. *Pasquantino v. United States*, 544 U.S. 349, 355 (2005). This point was made unequivocally clear in *Pasquantino*, where the Supreme Court held that Canada's right to collect excise taxes on imported liquor was an entitlement to collect money and that such a possession is something of value. *Id.*

---

3) While the Sixth Circuit's test for mail fraud contains only three elements – a scheme to defraud, use of the mail, and intent to deprive a victim of money or property – the Court separates mail fraud into four elements in order to more explicitly include the Supreme Court's material misrepresentation or omission requirement found in *Neder*. *See United States v. Olive*, No. 13-6174, 2015 WL 5559690, at *4 (6th Cir. Sep. 22, 2015) (citing *United States v. Cunningham*, 679 F.3d 355, 370 (6th Cir. 2012)); *see also Neder*, 527 U.S. at 25.

Depriving the sovereign of the money it was owed inflicted an economic injury no different than embezzling funds from its treasury. *Id.* at 356. The Supreme Court went on to explain that the right to be paid money has long been a species of property, and that the injury is no less just because the victim happens to be a government entity. *Id.* This rule applies equally to the federal government and to the states as sovereigns in their own right.

Defendants also argue that, because they are not the persons who actually owed the excise tax, there has been no deprivation of property. Rather, they claim the government has been deprived of only information, a mere regulatory interest that does not rise to the level of property. The Court disagrees. While it is true that Defendants did not personally owe the taxes due, they nonetheless deprived various governments of property by concealing the identities of the customers who did. This concealment, effected by Defendants' intentional failure to file the required Jenkins Act reports, enabled Defendants' customers to rest easy, knowing they could safely avoid paying the legally-owed taxes. Defendants' alleged actions, which assisted and enabled others to defraud the government of taxes, is sufficient to support a mail fraud charge. *See United States v. Brewer*, 528 F.2d 492, 496 (4th Cir. 1975).

It would be no different if a defendant had taken payment from customers in exchange for deleting the customers' names from the Internal Revenue Service's registry. In this example, the government is similarly deprived of "only" information; only the name, address, and existence of the taxpayer are concealed by the defendant's conduct. But that concealment prevents the government from collecting the money it is owed. Worse yet, it takes property from the sovereign and distributes it to the concealing party and its customers. While the analogy is simplified, it is, in essence, no different than what the

6

Government alleges in its Indictment. And both constitute a fraudulent deprivation of property under *Pasquantino*.

Further, Defendants' argument that excise taxes are not property, which is defeated by *Pasquantino*, is undermined by *Cleveland v. United States* – a case on which they place heavy reliance. *Cleveland*, decided before and distinguished by *Pasquantino*, held that video poker licenses were not property in the hands of the state of Louisiana. *Cleveland v. United States*, 531 U.S. 12, 15 (2000). That case, however, contained no allegation that the defendants defrauded the government of money; indeed, all revenue owed to the state for the licenses was paid. Instead, the purely regulatory process of issuing the licenses was the sole governmental interest harmed. The Supreme Court noted that "[t]ellingly, as to the character of Louisiana's stake in its video poker licenses, the Government nowhere alleges that Cleveland defrauded the State of any money to which the State was entitled by law." *Cleveland*, 531 U.S. at 22. Thus, the Supreme Court suggested in *Cleveland*, and subsequently confirmed in *Pasquantino*, that the right to be paid money is property in the hands of a sovereign. Accordingly, the Government's Indictment sufficiently alleges Defendants defrauded federal and state governments of property.

**2. Material Misrepresentation or Omission**

The main issue in Defendants' Motion to Dismiss, and the one about which the parties focus the bulk of their efforts, is whether the failure to file Jenkins Act reports is a material omission. Defendants argue that their failure to file the required reports is a mere regulatory violation. Further, they claim that, because they did not file any reports, they did not misrepresent any material facts to the federal, state, or local governments. Defendants believe that their failure to file Jenkins Act reports cannot be an omission because there

7

was never a duty to speak. However, as explained below, Defendants had a duty to speak, failed to do so, and their omission was material.

Defendants had a duty to speak, and their failure to file Jenkins Act reports amounts to fraud by omission. It is true that, because they did not file any reports, they did not commit any affirmative misrepresentations. But this does not relieve Defendants of liability. In addition to affirmative misrepresentations, fraud statutes cover knowing omissions. *See United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998); *see also United States v. Se Keun Oh*, 200 F. App'x 545, 553 (6th Cir. 2006).

Several courts have held that failure to file Jenkins Act Reports may constitute a misrepresentation or omission for the purpose of proving mail fraud. *Brewer*, 528 F.2d at 496; *United States v. Melvin*, 544 F.2d 767, 774-76 (5th Cir. 1977) (holding that the Jenkins Act was not the exclusive federal statute governing interstate sale of cigarettes and that conviction could also be obtained under the mail fraud statute); *City of New York v. Smoke-Spirits.com, Inc.*, 541 F.3d 425, 445-47 (2nd Cir. 2008) (holding that a Jenkins Act violation may support a wire fraud or mail fraud conviction), *rev'd on other grounds Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010); *United States v. Contents of Accounts*, No. 3:10-CV-228-H, 2010 WL 2556849, at *3 (W.D. Ky. Jun. 18, 2010) (holding that defendant's sale of cigarettes to out-of-state customers without filing the required Jenkins Act report probably does meet the elements of mail fraud). In fact, every court that has addressed this issue has found that knowing failure to comply with the Jenkins Act may support a mail fraud charge. While the Sixth Circuit has yet to tackle this narrow issue, the Court agrees with the consensus; therefore, intentional failure to file Jenkins Act reports is a knowing omission for mail fraud purposes.

An almost identical factual situation as the one presented here was addressed by the Fourth Circuit in *United States v. Brewer*. *Brewer*, 528 F.2d at 494. The defendant in *Brewer* engaged in a scheme in which she mailed cigarettes from North Carolina to Florida, but did not file the required Jenkins Act reports. *Id.* at 494. Failure to file the required reports amounted to concealment of the transactions, which allowed Florida residents to avoid paying their state's higher cigarette taxes. The *Brewer* court found that knowingly failing to file Jenkins Act reports was sufficient to support a charge of mail fraud. It went on to state that it was no defense that the defendant herself owed no tax nor made any affirmative misrepresentations, reasoning that "[i]t is enough that she knowingly devised a scheme that would enable Florida residents to obtain cigarettes without declaring them for taxation. One who consciously aids another in defrauding a government of taxes is a participant in the illicit enterprise." *Id.* at 496.

While not having addressed the exact issue presented by this case, the Sixth Circuit has held that fraud need not be supported by an affirmative misstatement; rather, a scheme or artifice to defraud may simply involve a knowing omission of a material fact. *DeSantis*, 134 F.3d at 764; *see also Se Keun Oh*, 200 F. App'x at 553. An omission results from a failure to speak when there was a duty to do so. Here, there was an unquestionable duty that the Defendants speak. More than just a civil duty to speak, the Jenkins Act contains criminal penalties for failure to file the necessary reports; there could scarcely be any situation where a duty to speak was more clearly imposed. Knowingly failing to file the reports constitutes an omission for the purpose of the mail fraud statute.

Other courts agree. For example, the Ninth Circuit addressed the issue of failure to file government-required reports and also found that such failure constitutes an omission.

9

*See United States v. Dowling*, 739 F.2d 1445, 1448-49 (9th Cir. 1984). In *Dowling*, the court found that a mail fraud conviction could be premised on a failure to file a required report under the Copyright Act. That court held in pertinent part,

> "It is settled in this Circuit that a scheme to defraud need not be an active misrepresentation. A nondisclosure or concealment may serve as a basis for the fraudulent scheme . . . [A] non-disclosure can only serve as a basis for fraudulent scheme when there exists an independent duty that has been breached by the person so charged. This independent duty may exist in the form of a fiduciary duty to third parties or may derive from an *independent explicit statutory duty* created by legislative enactment."

*Id.* (emphasis added); *see also United States v. Contents of Accounts*, 2010 WL 2556849 at *5. Similar to the defendants in *Dowling*, Defendants had an independent, explicit statutory duty to speak that was imposed by the Jenkins Act. Defendants committed an omission when they intentionally failed to comply with this duty in order to further their scheme to defraud.

Having found that Defendants committed omissions by failing to file Jenkins Act reports, the Court must now determine whether those omissions meet the materiality requirement announced by the Supreme Court in *Neder v. United States*. *Neder*, 527 U.S. at 25. Because the failure to file the reports induced the federal and state governments to not collect taxes owed by Defendants' customers, the Court finds Defendants' omissions were material.

Defendants rightly note that *Brewer*, the lead case in the Jenkins-Act-violation-as-mail-fraud universe, was decided before the Supreme Court required that the misrepresentations or omissions underlying a fraud be material. In *Neder* the Supreme Court held that, to be material, a misrepresentation or omission must have "a natural

10

tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed." *Neder*, 527 U.S. at 16.

Here, it is doubtless that Defendants' failure to file the required Jenkins Act reports influenced decision-making bodies within the federal and state governments. By not filing the required reports, Defendants concealed the names and addresses of their customers who owed taxes to those bodies. Concealing the names and addresses enabled Defendants' customers to avoid paying federal, state, and local taxes with impunity. Even though the tax was not owed by the Defendants, the success of their operation – and by all accounts it was very successful – depended on their customers' evasion of tobacco excise taxes. This evasion was not possible unless federal and state governments were induced to believe that no tax was due. Defendants failure to file the required reports created this deception.

It strains credibility to suggest that Defendants' businesses could have been successful without the federal and state governments being defrauded of millions of tax dollars. The comparative advantage for Defendants' enterprise was that it allowed everyone in the untaxed-cigarette distribution chain to profit by evading excise taxes. Indeed, the alleged scheme would have fallen apart had the Jenkins Act reports been filed. If the consumers had expected to pay all of the required taxes, they would have been better off buying the cigarettes locally and avoiding the shipping costs. The entire operation was predicated upon concealing the importation, distribution, and sale of cigarettes. Not filing the required Jenkins Act reports was a significant and necessary part of the scheme to defraud.

11

Accordingly, the Court concludes that failure to file Jenkins Act reports was a material omission sufficient to support a finding of conspiracy to commit mail fraud.

### 3. Intent to Defraud

The last two elements of mail fraud, intent to defraud and use of the mail, are sufficiently supported by the Indictment. Both are easily met.

The Government has adequately supported the Indictment with allegations of intent. Defrauding the federal and state authorities of excise taxes was necessary for Defendants' enterprise to operate successfully. While it may be true that Defendants' intent in selling cigarettes in this manner was to undercut the competition, it is equally true that they knew, or should have known, that their noncompliance with the Jenkins Act would enable their customers to evade cigarette excise taxes.

Further, failure to file Jenkins Act reports is not the only allegation supporting a finding of intent. Defendants claim that the Government is taking a violation of the Jenkins Act and a use of the mails and converting them into the serious crime of mail fraud. This ignores, however, that failure to file the reports is only part of the scheme to defraud that the Government alleges. While failure to file Jenkins Act reports was a significant part of the scheme because it concealed the cigarette transactions and induced the federal and state authorities to not collect their legally-owed taxes, the indictment alleges more than failure to file the required reports. The Indictment includes allegations of altering vendor names used by credit card companies to disguise cigarette transactions as glass-replacement purchases, of concealing money transfers to overseas accounts, and of rearranging assets to avoid loss in the event of a criminal investigation. The allegations in the Indictment, which the Government must ultimately prove to a jury, charge more than

a company that failed to file some reports; rather, they suggest a pattern of fraudulent and conspiratorial behavior that deprived governments and taxpayers of millions of dollars.

### 4. Medium Employed in Executing the Fraud

The requirement that the mail or the wires be utilized in furtherance of the fraud is easily satisfied by the Indictment.  Defendants solicited and conducted sales over the Internet, communicated with co-conspirators and customers via email, accepted payment through the mail, and shipped untaxed cigarettes using the mail.  These allegations are sufficient to satisfy the fourth and final requirement of the mail fraud statute.

**B.**     *Rule of Lenity Does Not Apply*

The Rule of Lenity does not bar prosecution for mail fraud in conjunction with violations of the Jenkins Act.  The Rule of Lenity provides that where there is an ambiguity within a criminal statute that permits two possible results, one harsher than the other, the less harsh result should be followed. *See United States v. Bass*, 404 U.S. 336, 348-49 (1971) (citing *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221-22 (1952). But this rule is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies."   *Moskal v. United States*, 498 U.S. 103, 108 (1990).  No such doubt exists here.

Defendants point to the breadth of the mail fraud statute to invoke the Rule of Lenity. They cite law review articles that highlight the litany of situations in which prosecutors have used the mail fraud statute to reach new kinds of criminal conduct, and they caution the Court that an over-extension of that statute is occurring here. This argument, however, conflates breadth with ambiguity.  *See Yates v. United States*, 135 S.Ct. 1074, 1098-99

(2015) (Kagan, J. dissenting) (stating the difference between breadth and ambiguity for Rule of Lenity purposes).  The mail fraud statute is very broad and has been used to prosecute a wide variety of criminal conduct, some of which Congress may not have anticipated.  But a statute is not ambiguous merely because it is applied in new situations. *National Organization For Women v. Scheidler*, 510 U.S. 249, 262 (1994) (holding that the RICO statute being "applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.").  Nothing is irrational, surprising, or unfair about applying the mail fraud statute to this scheme to defraud the federal, state, and local governments of tax revenue.  *See United States v. Trapilo*, 130 F.3d 547, 552 n. 8 (2nd Cir. 1997) (noting that the rule of lenity did not bar prosecution for wire fraud where defendants defrauded foreign governments of tax revenue).  For these reasons, the Rule of Lenity does not apply here to preclude the mail fraud counts.

### C. *Money Laundering Charge is Proper*

Because the mail fraud charge is proper, the money laundering charge related to the illicit proceeds of those frauds also survives Defendants' Motion to Dismiss.  Defendants' argument is that, because there is no mail fraud, there are no statutorily defined illicit proceeds on which to predicate a money laundering charge.  However, in finding the mail fraud charge to be proper, and mail fraud being one of the enumerated illegal activities that may support a charge of money laundering, Defendants' argument is rendered moot.

### III. Conclusion

The Court finds that Jenkins Act violations may support a charge of mail fraud, that the Rule of Lenity does not require a different result, and that the money laundering charges are proper.

Accordingly, **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. # 116) be, and hereby is, **DENIED**.

This 5th day of October, 2015.



G:\DATA\ORDERS\Ashland Criminal\2014\14-20 Order Denying MTD Mail Fraud and Jenkins Act DE 116.wpd