**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CRIMINAL ACTION NO. 14-20-DLB-EBA**

**UNITED STATES OF AMERICA**                                                   **PLAINTIFF**


**MEMORANDUM OPINION AND ORDER**


**JOHN MADDUX, JR., et al.,**                                                  **DEFENDANTS**

**\*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\***

This matter is before the Court on Defendants' and the government's various Objections to the Presentence Report ("PSR"). The Court held a hearing on those Objections on August 15, 2016 in Ashland, Kentucky. The Court, having reviewed the parties' briefing and considered their arguments from the hearing, will resolve the Objections as follows herein.

**I.     Factual and Procedural Background**

The facts of this matter are well known to the parties and have been recited numerous times by this Court, so there is little need to retread them here. John Maddux, Jr., Alexander Sergeev, Mikhail Serov, and David White pled guilty to various charges in the Indictment. Christina Carman, Julie Coscia, Anthony Coscia, and Michael Smith[1] were found guilty after a three-week jury trial. All of the abovementioned Defendants are now ready for sentencing. United States Probation completed a PSR for each Defendant, some

---

1) At his request, Defendant Michael Smith and his counsel were excused from attending the August 15, 2016 hearing. Smith's sentencing will be scheduled for a later date.

of whom have submitted objections to their PSRs.

## II.      Analysis

### A.      Standard of Review

The Court may accept as true those items in the presentence report not objected to by Defendants.  *United States v. Bondurant*, 146 F. App'x 762, 763-64 (6th Cir. 2005). However, for those contested portions, the Court must resolve any factual disputes employing a preponderance of the evidence standard.

### B.      Objections affecting all Defendants

#### i.      Loss Amount

The largest, and most important, disagreement the parties have relates to whether any loss may be attributable to Defendants' conduct. The parties do not dispute the amount of unpaid tax; instead, they disagree only about whether the unpaid tax can be a loss for Guideline purposes.  While Defendants claim that the unpaid cigarette taxes – which were owed by the Defendants' customers – are not properly construed as "loss" under the Guidelines, the government asserts that Defendants' conduct caused actual losses to state governments, and although somewhat halfheartedly, also argues that the Defendants could be held liable for intended losses in the alternative.

Application Note 3 of the United States Sentencing Guideline Manual § 2B1.1 defines loss for mail-fraud sentencing purposes.  *See* U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. n.3 (2015). Loss may be actual or intended.  Actual loss is defined as the "reasonably foreseeable pecuniary harm that resulted from the offense."  Intended loss means "(I) the pecuniary harm that the defendant purposely sought to inflict; and (II)

includes intended pecuniary harm that would have been impossible or unlikely to occur."

The Guidelines go on to define pecuniary harm as "harm that is monetary or that is otherwise readily measurable in money" and "reasonably foreseeable pecuniary harm as "pecuniary harm that the defendant knew or, under the circumstances, should have known, was a potential result of the offense."

The facts of this case are similar to those in *United States v. Wendladt*. 714 F.3d 388 (6th Cir. 2013). In that case, the defendants executed a scheme in which they provided false information about mortgage applicants. *Id.* at 390-92. Defendants profited from commissions made on successful mortgage applications. By lying on their customers' applications, defendants increased their volume, and thus their profits, despite knowing that the applicants were unqualified for the loans requested and would almost assuredly be unable to pay. Thus, as here, defendants were not the ones who actually "owed" the money out of which the banks were defrauded. Rather, that obligation belonged to the defaulting debtors. Yet the Sixth Circuit found that defendants caused actual losses in the amount of the defaulted and unpaid mortgage amounts because "[d]efault by a woefully unqualified home-loan borrower is so likely that ... the pecuniary harm ... will almost invariably include the full amount of unpaid principal on the fraudulently obtained loan." *Id.* at 393-94 (citing *United States v. Turk*, 626 F.3d 743, 750 (2d Cir.2010)).

The Court finds that the unpaid taxes are properly construed as actual losses to the various injured governments. By depriving the state governments of the identities of their customers – from whom the states would have sought the unpaid tax – Defendants caused a harm that is readily measurable in money. Further, Defendants knew that their customers, once informed that they owed tax but that Defendants would not report them,

would almost certainly not pay the tax.  And while Defendants are correct in their contention that people buy products online for convenience as well as price, the success of their scheme depended arbitraging between low- and high-tax states.  Because the intended loss would not be greater than the actual loss in this matter, the Court need not consider whether Defendants' conduct could have created intended losses.  U.S. SENTENCING GUIDELINES MANUAL § 2B1.1 cmt. n.3.

### ii.     Number of Victims Enhancement

The government wishes to impose a two-level enhancement because it claims the number of victims exceeds ten.  Defendants counter that the plain language of the Guidelines does not include governments, and thus, the enhancement is inappropriate.

Guideline § 2B1.1(b)(2)(A) provides for a two-level enhancement if the offense involved ten or more victims.  U.S. SENTENCING GUIDELINES MANUAL § 2B1.1(b)(2)(A).  In Application Note 1 of the same section, "victim" is defined as "any person who sustained any part of the actual loss determined under subsection (b)(1)."  "Person" includes "individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies."  Notably absent from this definition is any mention of governments – be they federal or state.

The government cites to two cases from the Eighth Circuit that it contends establish that governments can be victims under § 2B1.1(b)(2)(A).  In *United States v. Reyes,* the Eighth Circuit found that "victim" could include governments and agencies thereof.  90 F.2d 281, 288-89 (8th Cir. 1990).  However, that case dealt with the former § 2F1.1, which defined "victim" as the "person or entity from which the funds are to come directly."  *Id.* (emphasis in original).  While the Eighth Circuit extended *Reyes* to § 2B1.1, it did so with

4

no explanation of why that should be in light of the very different definition of "victim" found in the two Guideline provisions.  *See United States v. Cunningham*, 593 F.3d 726, 731-32 (8th Cir. 2013) (extending *Reyes* by citing to it and saying that "[g]overnmental entities can be considered victims for the purposes of this sentencing enhancement").

The statutory construction maxim of *expressio unius est exclusio alterius*, which states that the mention of one thing implies the exclusion of another, is instructive.  *See Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1357 (6th Cir. 1995) (explaining the application of *expressio unius est exclusio alterius*).  Here, in contrast to the Guideline definition encountered by the *Reyes* court, § 2B1.1's definition of victim is not broad and general like the word "entity;" instead, it is very specific and takes the time to list individuals as well as corporations, companies, associations, firms, partnerships, societies, and joint stock companies as "persons" who may be victims under § 2B1.1.  The decision to exclude governments from this list should be presumed to be purposeful.  And while the Supreme Court has noted that *expressio unius est exclusio alterius* does not apply to every statutory listing or grouping, it has consistently held that it has force when – as here – the items expressed are members of an associated group or series.  *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003).  Section 2B1.1's list of persons includes corporations and other business forms as well associative and societal groups, but omits one of the most important civic groups – governments.  The Court finds that § 2B1.1's definition of victim does not include governments, and thus, the enhancement for ten or more victims is not applicable to the Defendants.

### iii.    Scheme Outside United States

Defendants next contest the applicability of § 2B1.1(b)(10)'s two-level enhancement

5

for conduct where "a substantial part of a fraudulent scheme was committed from outside the United States."  U.S. SENTENCING GUIDELINES MANUAL § 2B1.1(b)(10).  There is no application note to guide the Court's decision for this enhancement, but "substantial" is traditionally defined as "important, essential, and material" and as "containing the essence of a thing."  BLACK'S LAW DICTIONARY (10th ed. 2014).

Defendants schemes post-PACT Act contained an international element that was essential.  The PACT-Act prohibited the shipping of cigarettes through the mail and all but dried up Defendants domestic shipping of tobacco.  In an effort to keep their businesses afloat, Defendants began employing international suppliers of cigarettes.  Defendants companies would place orders on behalf of their customers and the international suppliers would then attempt to ship cigarettes to those customers in the United States.  For the post-PACT counts in the Indictment, the international component was important, essential, and material, and it is no stretch to say that the "essence" of those schemes was international in nature.  Accordingly, the Court finds that § 2B1.1(10)'s two-level enhancement for conduct occurring outside the United States is applicable to the Defendants in this case, with the exception of Christina Carman.  Carman is exempted because her only count of conviction is Count One, and the government has not proven by a preponderance of the evidence that a substantial part of that scheme occurred outside the United States.  Thus, the two-level enhancement is inapplicable to her.

### iv.    Restitution

The government seeks restitution only for Defendants' post-PACT-Act conduct. While the Court may order restitution, it is not required to do so.  Title 18, Section 3663A of the United States Code explains the workings of criminal restitution.  Subsection (c)(3)(B)

provides that, "if a court finds, from facts on record, that ... determing complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process," then restitution shall be inapplicable. 18 U.S.C. § 3663A(c)(3)(B).

The Court finds that ordering restitution in this case would unduly burden the sentencing process.  While the amounts of actual loss are known, how those losses would be appropriated among Defendants, especially given the uncertainty of collection from their customers, has not been shown.  Stated differently, determining each Defendants' responsibility for causing the victims' losses would greatly complicate the sentencing process. The United States has indicated that the States will seek to collect their unpaid taxes from the consumers who failed to pay them, but only for pre-PACT-Act offenses.  It is unclear whether Defendants would be entitled to an offset from their customers for post-PACT-Act conduct as well.  If so, the Court, the Clerk, and the Probation Office would encounter massive accounting issues. Not only would the Court have to engage in piecemeal reductions to Defendants' restitution orders, it would have to then equitably appropriate those amongst the Defendants.  Additionally, the amount of money the States stand to collect, while large to a individual defendant, is relatively minor to a state government.  And finally, it is uncontested that the customers are the ones that owe the tax, not the defendants.  Accordingly, the Court finds that the need to collect restitution is far outweighed by the burden on the sentencing process in this matter, and no order of restitution shall issue.

However, the Court will order that restitution be paid by John Maddux for Counts 31-34, which he pled guilty to on May 6, 2016.  Those Counts – violations of 18 U.S.C. § 1001 – differ from the fraud and money laundering counts because the loss amounts are owed only by John Maddux.  Additionally, the only victim is the United States government.  Thus, restitution for those counts does not present the abovementioned administrative issues.  Accordingly, Maddux will be ordered to pay restitution in the amount of $130,958.83, which represents the amount of excess compensation he was paid as a result of his misrepresentations to the Department of Labor.

### C.    Objections by Individual Defendants

#### i.    John Maddux

##### 1.    Role Enhancement

John Maddux contests his four-level enhancement under § 3B1.1's Aggravating Role enhancement.  Under § 3B1.1(a), "if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive" the offense level is increased by four.  U.S. SENTENCING GUIDELINES MANUAL § 3B1.1(a).  When determining what role a defendant played in a criminal offense,  § 3B1.1's Application Note 4 lists several factors the Court should consider when determining what enhancement is appropriate: (1) exercise of decision-making authority; (2) nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) nature and scope of the illegal activity; and (6) the degree of control and authority exercised over others.  U.S. SENTENCING GUIDELINES MANUAL § 3B1.1

cmt. n.4.

Applying these factors to John Maddux's conduct, the Court finds that a four-level increase is warranted for his role as an organizer or leader of a criminal activity that involved five or more participants.  First, the offense conduct here involved more than five participants – in fact, five participants were convicted at trial and that number does not include other defendants who pled guilty.  Next, the evidence demonstrated that Maddux exercised decision making authority.  He did so not only over his employees in Kentucky, but over other members of the conspiracy as well.  Although Glenn Herndon may have started the business, Maddux as a capable successor.  Once the PACT Act was passed, Maddux helped organize the international suppliers and connected them to other Defendants who were running illegal cigarette-distribution businesses.  Maddux was the linchpin of this criminal conspiracy.  Without Maddux, and the now deceased Herndon, the conspiracy would have never been.  Maddux recruited other members, both domestically and internationally, to ensure the continuing success of their operations.  He recruited another defendant to enable the companies to utilize credit card payments by making false statement on vendor forms.  While it unclear from the record whether Maddux claimed a right in a larger share of the profits, he certainly reaped the largest share.  Lastly, the conspiracy was long in duration, large in scope, and very lucrative.  All of these factors lead the Court to find that a four-level enhancement is appropriate for Maddux.

### 2.    Sophisticated Money Laundering

The government seeks to apply § 2S1.1(b)(3)'s two-level enhancement for sophisticated money laundering.  That Guideline provision provides an enhancement if a defendant was convicted under 18 U.S.C. § 1956 and the offense involved sophisticated

money laundering.  Application Note 5 helps illuminate what is meant by "sophisticated money laundering" and notes that it usually involves the use of "fictitious entities; shell corporations; two or more levels of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate; or offshore financial accounts."  U.S. SENTENCING GUIDELINES MANUAL § 2S1.1 cmt. n.5.

This Guideline enhancement is inapplicable to Maddux.  While it may be true, at least to some extent, that Maddux employed fictitious entities in his scheme by disguising the nature of his businesses to the merchant vendors, none of the other factors support a finding of sophisticated money laundering.  All of Maddux's businesses operated in his or his wife's name.  They never attempted to hide money or to "clean" otherwise dirty money.  Although he sent some money overseas, it was for purchasing cigarettes and not to disguise or otherwise make the money difficult to trace; moreover, there was no evidence that Maddux held any money overseas himself.  There was only one level of transfer that was intended to make the money seem like something it was not, and that was so the companies could permit their customers to use credit cards.  If what he did amounted to sophisticated money laundering nearly all money laundering would be sophisticated, rendering the enhancement meaningless.  For all these reasons, the Court finds that the two-level enhancement is not appropriate for Maddux.

### ii.    Christina Carman

#### 1.    Acquitted Conduct

Carman claims that her acquitted conduct should not be considered in determining her sentence.  The Court agrees.  While the Court may consider acquitted conduct when sentencing Carman, it does not have to do so.  *See United States v. White*, 551 F.3d 381,

386 (6th Cir. 2008).  The Court is not persuaded that the government has proven Carman's involvement in the other offenses beyond a preponderance of the evidence.  Although employing a more stringent standard, the jury was not either.  While the evidence showed that Carman had some involvement, especially pre-PACT Act, she was not involved in any of the e-mail chains on which the government greatly relied.  And while she was undoubtedly involved with the domestic operations pre-PACT Act, there simply is not enough evidence of her involvement thereafter to warrant considering her acquitted conduct for sentencing purposes.

### 2.      Role Enhancement or Reduction

The government believes that Carman should receive a two-level enhancement for her role in the conspiracy, while she believes a two-level reduction is appropriate because she played only a minor role.  In this case, the Court finds that granting neither party's request is appropriate.

The evidence does not support a role enhancement.  Under § 3B1.1(c), a two-level enhancement is appropriate if "the defendant was an organizer, leader, manager, or supervisor in any criminal activity."  U.S. SENTENCING GUIDELINES MANUAL § 3B1.1(c). While the record does reflect that Carman may have had control over a few employees when Maddux was absent, it also demonstrates that she basically did what he told her and acted as a extension of him.  This, of course, does not prevent her from being a manager or supervisor; in fact, it is in someways precisely what managers and supervisors do.  However, the vast majority of the record shows Carman working at the Ferry Street warehouse in the ordinary course.  The application notes make clear that the purpose of the enhancement is to punish more severely those that have a greater responsibility for

committing the offense.  U.S. SENTENCING GUIDELINES MANUAL § 3B1.1 cmt. background.

Focusing on these concerns about relative responsibility, the Court does not find that

Carman was more responsible than other Defendants, such as Julie Coscia, who are not

receiving role enhancements.

Similarly, the Court does not believe that Carman is entitled to a role reduction

either.  Guideline § 3B1.2 provides either two- or four-point reductions for defendants who

play minor or minimal role, respectively, in the offense.  U.S. SENTENCING GUIDELINES

MANUAL § 3B1.2.  Cases falling in between the two points are entitled to a three-point

reduction.  Here, Carman has requested a two-point reduction as a minor participant.

These downward adjustments are meant for those defendants who are substantially less

culpable than the average defendant.  U.S. SENTENCING GUIDELINES MANUAL § 3B1.2 cmt.

n. 3(A).  The decision to adjust downward is a fact-based one, and courts should consider

the following non-exhaustive list of factors:

> (i)     the degree to which the defendant understood the scope and structure
> of the criminal activity;
>
> (ii)    the degree to which the defendant participated in planning and
> organizing the criminal activity;
>
> (iii)   the degree to which the defendant exercised decision-making
> authority or influenced the exercise of decision-making authority;
>
> (iv)    the nature and extent of the defendant's participation in the
> commission of the criminal activity, including the acts the defendant
> performed and the responsibility and discretion the defendant had in
> performing those acts; and
>
> (v)     the degree to which the defendant stood to benefit from the criminal
> activity.

U.S. SENTENCING GUIDELINES MANUAL § 3B1.2 cmt. n.3.

Here, the evidence demonstrated that Carman fully understood the nature and scope of the conspiracy.  Although she was not copied on the e-mails sent between the other conspirators, she did travel to Israel with Maddux to meet with an international supplier.  There is little evidence that she participated in planning or organizing the scheme, or had decision-making authority, but she was involved with the businesses.  She worked their full-time and the businesses were held in her name.  Perhaps most importantly, she and her husband Maddux profited handsomely from the scheme – more so than any other Defendants.

On balance, the Court finds that Carman should not receive a mitigating role adjustment.  Put simply, Carman was not substantially less culpable than the average participant.  For this reason the Court finds that a minor role reduction is not warranted for her.

**III.    Conclusion**

Accordingly, **IT IS ORDERED** that the objections to the PSRs raised by the parties are **sustained in part** and **overruled in part** as set forth herein.

For its ease and for that of the parties, the Court includes a chart summarizing each Defendants' applicable sentencing guideline range:

| Defendant | Total Offense Level | Criminal History | Guideline Range |
|---|---|---|---|
| John Maddux | 35 | I | 168-210 Months |
| Christina Carman | 27 | I | 70-87 Months |
| Julie Coscia | 25 | I | 57-71 Months |

| | | | |
|---|---|---|---|
| Anthony Coscia[2] | 23 | I | 46-57 Months |
| Michael Smith | 27 | I | 70-87 Months |
| Alexander Sergeev | 26 | I | 63-78 Months |
| Mikhail Serov | 26 | I | 63-78 Months |
| David White[3] | 21 | I | 37-46 Months |

This 23rd day of August, 2016.



Signed By:

**David L. Bunning**    *DB*

**United States District Judge**

K:\DATA\ORDERS\Ashland Criminal\2014\14-20 MOO re Objections to PSR.wpd

---

2) The Court finds that Anthony Coscia is entitled to two-point mitigating role reduction because he played only a minor role in the commission of these offenses. Although there was some evidence of him helping the Defendants forge documents and there were emails in which he swore loyalty to Maddux and Herndon, the evidence did not show that he exercised any decision-making authority, was greatly involved in his wife's business, or that he profited substantially from his conduct. Instead, the evidence demonstrated that he occasionally helped with his wife's business, but for the most part, was only tangentially involved. While his limited role does not absolve him of criminal liability, it does warrant a two-level decrease pursuant to § 3B1.2.

3) The initial PSR calculated White's Total Offense Level to be 23. He did not receive a two-point enhancement for a scheme outside the United States because he pled guilty to only Count Four of the Indictment, which did not contain allegations of international conduct. His total offense level is reduced by two due to the Court's finding that § 2B1.1(b)(2)(A)'s enhancement for ten or more victims is inapplicable in this case.