**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CRIMINAL ACTION NO. 14-20-DLB-EBA**

**UNITED STATES OF AMERICA**                                       **PLAINTIFF**

**v.**                     <u>**MEMORANDUM OPINION AND ORDER**</u>

**JOHN MADDUX, JR., et al.**                                 **DEFENDANTS**

\*\* \*\* \*\* \*\* \*\* \*\* \*\* \*\*

Subsequent to Defendants Christina Carman, Julie Coscia, Anthony Coscia, and Michael Smith being found guilty by a jury (Doc. # 345), the United States filed a Motion for Preliminary Judgment of Forfeiture. (Docs. # 378 and 402). Defendants Carman and Smith having filed Responses (Docs. # 407 and 412) and the United States having filed a Reply in Support of its Motion (Doc. # 410), this matter is now ripe for the Court's review.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

On January 27, 2016, Defendants Christina Carman,[1] Julie Coscia,[2] Anthony Coscia,[3] and Michael Smith[4] were convicted by a jury on charges of conspiracy to commit

---

[1] Christina Carman was convicted by the jury on Counts 1 and 2, but the Court granted her motion for acquittal as to Count 2 (Doc. # 427). Thus, Carman was found guilty only on Count 1 (conspiracy to commit mail and wire fraud).

[2] Julie Coscia was convicted on Counts 3, 6, 9, 10, 14, 17, and 18 (conspiracy to commit mail fraud, wire fraud, and money laundering).

[3] Anthony Coscia was convicted on Counts 3, 6, 9, 10, 14, 17, and 18 (conspiracy to commit mail fraud, wire fraud, and money laundering).

[4] Michael Smith was convicted on Counts 5, 6, and 14 (conspiracy to commit mail fraud, wire fraud, and money laundering).

mail fraud, wire fraud, and money laundering. (Doc. # 345). The Indictment charged that defendants trafficked untaxed cigarettes in violation of the Jenkins Act and Prevent All Cigarette Trafficking ("PACT") Act, 15 U.S.C. §§ 375-378. (Doc. # 1, pp. 2-3). From around January 2003 through June 2010, Defendants John Maddux, Jr. and Christina Carman operated Your Kentucky Tobacco Resource, Inc. ("YKTR"). *Id.* at 4. From around July 2005 through December 2013, Maddux and Carman also operated ESR II, Inc. *Id.*

From around December 2008 through December 2013, Defendants Julie Coscia and Anthony Coscia operated an Arizona-based cigarette call center, ASC Properties d/b/a Cigarette Girl. *Id.* at 6. From around August 2005 through September 2013, Defendant Michael Smith operated a cigarette call center and two internet websites d/b/a Payless Enterprises, Inc. ("Payless"). *Id.* Defendants Mikhail Serov, Alexander Sergeev, Yuriy Pak, and Jack Weizman each operated foreign cigarette fulfillment centers. *Id.* at 6.

The Coscias and Smith obtained the cigarettes for their customers from YKTR and/or ESR II. *Id.* at 13-14. Carman and Maddux obtained cigarettes from Serov, Sergeev, Weizman, and Pak. *Id.* at 22, 35.

The Indictment alleged that Defendants engaged in a scheme, wherein they conspired to obtain untaxed cigarettes from suppliers inside and outside the United States and resell and ship those cigarettes to customers throughout the United States. *See id.* The defendants failed to report their cigarette sales to federal, state, and local governments, in violation of the Jenkins Act and PACT Act. *Id.* at 2-3. Consequently, the taxing authorities were not able to collect excise taxes from their citizen-customers or from Defendants. Defendants were convicted of using mail and wire communications to execute their scheme, and of laundering the proceeds of their crimes. (Doc. # 345).

The Indictment also contained forfeiture allegations as to Defendants Smith, Carman, Julie and Anthony Coscia, and Maddux[5] pursuant to 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 982(a)(1). (Doc. # 1, pp. 69-70). The Government is seeking a money judgment forfeiture in the amount of $34,934,514.12 against Carman, $726,495.22 against the Coscias, and $6,271,917.33 against Smith. (Docs. # 378-1 and 402-1). These totals represent the proceeds directly attributable to each defendant's specific business operation. (Doc. # 378-1, p. 4, n. 8).

## II. ANALYSIS

### A. The Forfeiture Statute

The Government seeks forfeiture under 18 U.S.C. § 981(a)(1)(C) and 18 U.S.C. § 982. Section 981(a)(1)(C) authorizes the forfeiture of "proceeds traceable to ... any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." Mail fraud and wire fraud are "specified unlawful activities." 18 U.S.C. § 1956(c)(7). Section 982(a)(1) provides that the Court, in imposing a sentence on a person convicted of money laundering, "shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." The Government must establish the requisite nexus between the forfeited property and the offense by a preponderance of the evidence. *United States v. Coffman*, 859 F.Supp.2d 871, 875 (E.D. Ky. April 16, 2012).

### B. Preponderance of the Evidence

The Government has established the requisite nexus between the money judgment

---

[5] Maddux entered into an Agreed Preliminary Order of Forfeiture as to Specific Property with the Government, which became final at the time of sentencing. (Doc. # 535).

forfeiture it seeks against each of the defendants. Defendant Smith is the only defendant who challenges the nexus between his offense and the requested money judgment. Smith claims that the Government's calculation is "pure speculation" because it did not recover a point-of-sale system for Payless Enterprises, as it did for the other defendants' operations. (Doc. # 412). Instead, the forfeiture amount was determined based on a review of sales deposited into the bank accounts for Payless Enterprises. (Doc. # 402-1). Smith claims that this measure is inaccurate, because some deposits into the Payless accounts were from the sale of electronic cigarettes and other lawful items. (Doc. # 412).

The Government, however, did not base its calculation solely on the deposits made into Payless Enterprises' bank accounts; it also examined the point-of-sale systems recovered from YKTR, and information regarding the total number of cigarette packs Payless purchased through YKTR. Taken as a whole, the Government has established by a preponderance of the evidence that at least $6,271,917 was involved in money laundering connected to the sale of untaxed cigarettes by Payless.

### C. Joint and Several Liability

The Sixth Circuit has held that coconspirators in a RICO conspiracy "should be held jointly and severally liable for the reasonably foreseeable proceeds of the enterprise, and are not limited to amounts each defendant personally obtained." *United States v. Corrado*, 227 F.3d 543, 558 (6th Cir. 2000). This Court has adopted the same rule with respect to forfeitures in a non-RICO conspiracy. *See United States v. Stivers*, No. 6:09-16-S-DCR, 2010 WL 2365307, *6-7 (E.D. Ky. June 11, 2010). *Stivers* relied in part on other Circuits that have also followed this rule in non-RICO conspiracy cases involving money laundering. *See, e.g., United States v. Pitt*, 193 F.3d 751, 765 (3d Cir. 1999) ("[T]he amount of property

involved in a money laundering conspiracy cannot be different for different conspirators."); *United States v. Hurley*, 63 F.3d 1, 22 (1st Cir. 1995) ("So long as the amount handled by others is foreseeable as to a defendant, the foreseeable amount represents the sounder measure of liability.").

Here, Defendant Carman argues that the money judgment against her must be limited to the amount she actually received. Carman claims that she cannot be held liable for the full amount of YKTR's proceeds, because she was never entitled to receive 100% of its revenue. (Doc. # 407, p. 3). However, as a coconspirator, each defendant is jointly and severally liable for the forfeiture of the full amount of the proceeds of the conspiracy. *See Stivers*, 2010 WL 2365307. If Carman could be liable for the proceeds of the entire conspiracy, then she is certainly accountable for the full amount attributable only to her own business operations. Therefore, the money judgment will not be limited to what each defendant actually received, and Carman is liable for the full amount of YKTR's proceeds.

### D. "Proceeds"

Defendants contend that the money judgment forfeiture should be based on net, rather than gross, proceeds. The forfeiture statute provides two separate definitions of proceeds, whereby the nature of the underlying criminal transaction determines the applicable definition.

The first definition, 18 U.S.C. § 981(a)(2)(A), provides the following:

> In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

By contrast, 18 U.S.C. § 981(a)(2)(B) provides:

In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services.

Here, Defendants argue that they were selling a lawful good in an illegal manner, thus subjecting their proceeds to the definition in subsection (B).

### 1. Specified Unlawful Activity

Any property which constitutes or is derived from proceeds traceable to any offense constituting "specified unlawful activity" is subject to forfeiture. 18 U.S.C. § 981(a)(1)(C). "Specified unlawful activity" is used as defined in § 1956(c)(7), which references § 1961 (money laundering). Subsection (1) of the money laundering statute includes offenses related to trafficking in contraband cigarettes. 18 U.S.C. § 1961(1). Thus, defendants' proceeds are traceable to a "specified unlawful activity" and subject to forfeiture.

The Government contends that since defendants' conduct falls within the definition of "specified unlawful activity," the proceeds from that conduct are subject to the definition in Section 981(a)(2)(A), which applies to cases involving "unlawful activities." The United States finds support for its position in district court decisions from other jurisdictions. *See, e.g.*, *United States v. All Funds on Deposit in United Bank of Switzerland (Sawan Exchange Company)*, 188 F.Supp.2d 407, 409 (S.D.N.Y. 2002) (holding that if the forfeiture is brought under the specified unlawful activity prong of section 981(a)(1)(C), the term "proceeds" always means "gross proceeds," not "net profits," because § 981(a)(2)(A) authorizes the forfeiture of the gross proceeds of any unlawful activity). However, the Second Circuit declined to follow the reasoning in *United Bank of Switzerland* when hearing a similar case

6

on appeal:

> The government's reading renders § 981(a)(2)(B) essentially meaningless. Almost every predicate crime listed in § 981(a)(1)(C) is also a "specified unlawful activity" listed in § 1956(c)(7). If every "specified unlawful activity" is subject to gross forfeiture under § 981(a)(2)(A), there would be only a handful of statutes involving counterfeiting, forgery, explosive materials, and fraudulent identification documents that would fall under the auspices of § 981(a)(2)(B). That interpretation would also lead to peculiar results. Some cases involving lawful goods or lawful services would be subject to forfeiture under § 981(a)(2)(B) while other cases involving lawful goods or lawful services, by virtue of constituting a "specified unlawful activity," would be subject to gross forfeiture under § 981(a)(2)(A).

*United States v. Mahaffy*, 693 F.3d 113 (2d Cir. 2012); *see also United States v. Nacchio*, 573 F.3d 1062 (10th Cir. 2009) (holding that "specified unlawful activity" is not coterminous with "unlawful activities" as used in § 981(a)(2)(A)). This reasoning is persuasive. The term "specified unlawful activity" as used in § 981(a)(1)(C) is defined by statute; if Congress intended to use the same defined term in § 981(a)(2)(A), they would have done so by using the full term "*specified* unlawful activity," not "unlawful activity." Accordingly, a case involving a "specified unlawful activity" as defined in § 981(a)(1)(C) will not necessarily use the definition of "proceeds" described in § 981(a)(2)(A).

### 2. Illegal Goods

Forfeitures stemming from cases involving "illegal goods" are subject to the definition of proceeds in § 981(a)(2)(A). Defendants contend that cigarettes are lawful goods, and that they were selling the lawful goods in an unlawful manner. The Government argues that while cigarettes are lawful, *contraband* cigarettes are inherently *unlawful*.

The Sixth Circuit has not addressed whether cigarettes involved in illegal cigarette trafficking are considered "illegal goods," but decisions from other circuits provide guidance. The Fourth Circuit considered the issue where a defendant was charged with violating the

7

Contraband Cigarettes Trafficking Act ("CCTA"). *United States v. Hasan*, 18 F.3d 338 (4th Cir. 2013). The CCTA defines "contraband cigarettes" as "a quantity in excess of 10,000 cigarettes, which bear no evidence of payment of the applicable state or local taxes in the state or locality where such cigarettes are found." 18 U.S.C. § 2341(2). The Fourth Circuit reasoned that when cigarettes are possessed without evidence of payment of taxes, they are contraband *per se*, and thus, illegal goods.

The *Hasan* Court found support from other courts that reached the same conclusion. For example, the Eleventh Circuit found that where the defendant was charged with a violation of the CCTA, a forfeiture based on the wholesale value of cigarettes was accurate. *United States v. Noorani*, 188 Fed. App'x. 833 (11th Cir. 2006); *see also United States v. Funds from First Reg'l Bank Acct. No. XXXXX1859*, 639 F.Supp.2d 1203 (W.D. Wash. 2009); *United States v. Patel*, 949 F.Supp.2d 642 (W.D. Va. Jan. 11, 2013); *United States v. Diallo*, No. 09-CR-858, 2011 WL 135005 (S.D.N.Y. Jan. 13, 2011). In *First Regional Bank*, the district court reasoned that the case involved "illegal goods" because unregistered cigarettes were unlawful under state law. 639 F.Supp.2d at 1216. Similarly, in *Patel*, the court found that because the possession and trafficking of contraband cigarettes is inherently illegal, the cigarettes involved are "illegal goods." 949 F.Supp.2d at 653.

Here, defendants were dealing in unstamped, or untaxed, cigarettes. It is inherently unlawful under state and federal laws to possess cigarettes bearing no evidence of the payment of applicable taxes. Therefore, the cigarettes involved in this case are "illegal goods," and the *gross* proceeds therefrom are subject to forfeiture according to §

8

981(a)(2)(A).[6]

### E. The Excessive Fines Clause of the Eighth Amendment

The Eighth Amendment guarantees protection against excessive fines. The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) (citing *Austin v. United States*, 509 U.S. 602, 609-10 (1993)). The Supreme Court has held that forfeitures are "fines" subject to Eighth Amendment scrutiny if they constitute punishment for an offense. *Id.*

The forfeitures here are punitive, and thus, subject to the Excessive Fines clause of the Eighth Amendment. The Government provided a loss calculation based on lost tax revenues attributable to each defendant. The amount of money judgment forfeiture the Government seeks, however, is much larger than the total tax loss; the Government seeks forfeiture of the conspiracy's total gross proceeds. Because the forfeiture here goes well beyond the defendants' net proceeds, and beyond the amount needed to compensate the Government for its losses, it is more punitive than remedial. Therefore, the Eighth Amendment's Excessive Fines Clause applies to these forfeitures.

A "punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.* at 334. The Supreme Court has emphasized that "judgments about the appropriate punishment for an offense belong in the

---

[6] The Court acknowledges that an interpretation based on the plain text of the statute could reasonably lead to the opposite result, as cigarettes are generally considered a lawful commodity. However, the Court cannot ignore the persuasive precedent in which other courts have found that untaxed cigarettes are illegal goods. Accordingly, the Court will consider the cigarettes as "illegal goods" for the purposes of § 981(a)(2)(A).

9

first instance to the legislature," and "any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise." *Bajakajian*, 524 U.S. at 336 (citing *Solem v. Helm*, 463 U.S. 277 (1983)). With these considerations in mind, the Court examines the following factors to determine if a forfeiture is excessive: (1) the nature of the offense; (2) the origin and intended use of the money; (3) whether the offense was connected to other crimes or was an isolated incident; (4) whether the defendants belong to the class of persons targeted by the statute; (5) the maximum sentence and fine for the offense; and (6) the harm caused by the defendants' actions. *Id.* at 337-39. In *Bajakajian*, the Supreme Court held that the forfeiture ordered against a defendant guilty of failure to report exported currency was excessive because (1) the crime was merely a reporting offense; (2) the money was not obtained illegally; (3) the offense was an isolated incident; (4) the defendant was not in the class of persons (i.e., money launderers) targeted by the reporting statute; (5) the forfeiture was many times larger than the fine imposed by the district court; and (6) the harm caused was minimal and the forfeiture bore no correlation to any injury suffered by the Government. *See id.*

The Sixth Circuit has acknowledged that "courts can reduce the forfeiture to make it proportional to the seriousness of the offense so as not to violate the Eighth Amendment prohibition against . . . excessive fines." *United States v. Corrado*, 227 F.3d 543, 552 (6th Cir. 2000) (finding that the Eighth Amendment had not been violated in light of the seriousness of the offenses charged where the defendants were alleged members of the Detroit Mafia and had been convicted of conspiracy under RICO). When it considers whether forfeitures are excessive under the Eighth Amendment, the Sixth Circuit places great weight on the maximum sentence and fine that could be imposed for the underlying

10

offense. *See, e.g.*, *United States v. Ely*, 468 F.3d 399 (6th Cir. 2006); *United States v. Elder*, 90 F.3d 1110, 1113 (6th Cir. 1996).

In *Elder*, defendants were convicted of conspiracy to distribute cocaine, money laundering, and engaging in a continuing criminal enterprise. *Elder*, 90 F.3d at 1116. The Sixth Circuit held that because "the value of the cumulative assets forfeited did not equal the fines which could have been assessed ... it cannot be rationally suggested that the forfeitures were so grossly disproportionate to the crime that it constituted cruel and unusual punishment or an excessive fine." *Id.* at 1132-33. In *Ely*, the Sixth Circuit applied the *Bajakajian* factors to review the district court's forfeiture order for plain error. *See Ely*, 468 F.3d 399. There, the defendant had been convicted of bulk cash smuggling and making a false material statement to a Customs and Border Protection officer. *Id.* at 400. The Court found that it was "neither obvious nor clear" that the amount of forfeiture was grossly disproportionate to the crime, noting that the amount ordered was less than one-tenth of that in *Bajakajian*, and the amount fell within the fine range for the offense. *Id.* at 403.

This District has examined whether a forfeiture order was grossly disproportionate to an individual defendant's offense in a conspiracy case. *United States v. Stivers*, No. 6:09-CR-16, 2010 WL 2365307 (E.D. Ky. June, 11, 2010). The court relied heavily on a Fourth Circuit case in which the court noted:

> In [conspiracy] cases, some defendants inevitably disgorge more money than they received from the conspiracy, thus forfeiting property that they obtained lawfully in order to satisfy the forfeiture judgment. In a case where a defendant played a truly minor role in a conspiracy that generated vast proceeds, joint and several liability for those proceeds might result in a forfeiture order grossly disproportional to the individual defendant's offense.

11

*Id.* at *8-9 (quoting *United States v. Jalaram*, 599 F.3d 347, 355 (4th Cir. 2010)). Ultimately, the Fourth Circuit found that the forfeiture was not excessive as to the defendant, a major player in the organization who was charged with prostitution and money laundering. *Jalaram,* 599 F.3d at 356-57. The *Stivers* Court also found that the forfeiture was not excessive as to the defendant in that case, because the harm from corruption surrounding elections was significant, there was evidence connecting the conspiracy to drugs and violence, and the maximum statutory penalty for the offenses included a fine of twice the value of the property involved in the transaction. *Stivers*, 2010 WL 2365307, at *9-10. The Court reasoned that it was apparent from the statutory maximum "that congress considered these to be very serious offenses," and the defendant faced a "significantly higher hurdle" to show gross disproportionality. *Id.* at *10. The fact that the defendant played a major role in the conspiracy made that hurdle "insurmountable." *Id.*

### 1. Michael Smith

The Government seeks a money judgment forfeiture in the amount of $6,271,917.33 against Defendant Michael Smith. (Doc. # 402-2). This sum is excessive under the Eighth Amendment, and must be reduced to an amount proportional to Smith's crimes.

The first *Bajakajian* factor, the nature of the offense, weighs in Smith's favor. Smith's offense was merely an economic crime. It did not involve drugs, violence, extortion, or other elements present in many crimes underlying money laundering forfeiture. Next, the maximum sentence and fine for Smith's offense show that while the offense is serious, it is not proportional to the forfeiture sought here. The money laundering statute allows for a fine of up to two times the amount "involved in" the offense. 18 U.S.C. § 1956(a). The guideline range is also instructive here, because it takes into account

important factors relating to the gravity of the offense, such as Smith's role in the conspiracy. Under the Guidelines, Smith could be fined within a range from $10,000 to $100,000, and sentenced to a term from seventy to eighty-seven months imprisonment. (Doc. # 634). The money judgment the Government seeks is nearly sixty-three times the maximum fine allowed by the Sentencing Guidelines.

However, several of the factors considered in *Bajakajian* weigh in favor of ordering a money judgment forfeiture using the Government's calculation. First, the proceeds at issue were obtained from illegal activity: selling contraband cigarettes in violation of the Jenkins and PACT Acts. Next, the offenses giving rise to forfeiture – money laundering, wire fraud, and mail fraud – were connected to the conspiracy to sell contraband cigarettes. Finally, Smith fits squarely within the class of persons targeted by the wire fraud, mail fraud, and money laundering statutes, as he used wires and mail to facilitate a fraudulent scheme, and laundered the proceeds obtained from that scheme.

Considering all of the aforementioned factors as they relate to Smith, the Court finds that the forfeiture is grossly disproportionate to the gravity of Smith's offense. In light of the fact that the money judgment is nearly sixty-three times the fine recommended under the Guidelines, the harm caused was merely economic, and Smith did not play a major role in the conspiracy, a money judgment amount over six million dollars violates the Excessive Fines Clause of the Eighth Amendment. For all of these reasons, the Court finds that a money judgment forfeiture amounting to $1,567,979.33, a 75% reduction, is appropriate and reasonable under the Eighth Amendment.

    **2.**    **Julie Coscia**

The Government seeks a money judgment forfeiture of $762,495.22 against Julie

13

Coscia. (Doc. # 378-1). Defendant Julie Coscia does not challenge the Government's judgment of forfeiture. Nevertheless, the Court finds that the forfeiture amount requested does not violate the Eighth Amendment's prohibition against excessive fines.

Most of the *Bajakajian* analysis is the same for Defendant Julie Coscia as it was for Defendant Smith. Julie Coscia's offense was merely economic, and she did not play a major role in the overarching conspiracy. But, like Smith, Julie Coscia's proceeds are connected to a years-long conspiracy to sell contraband cigarettes, and she fits squarely within the class of persons the wire fraud, mail fraud, and money laundering statutes seek to punish.

The analysis differs with respect to the Guideline range for Julie Coscia's offense in relation to the requested money judgment amount. The Government seeks a money judgment forfeiture of $726,495.22 against Julie Coscia. Under the Guidelines, Julie Coscia could be fined anywhere from $10,000 to $2,500,000. (Doc. # 550). Because the forfeiture the Government seeks falls within the fine range under the Guidelines, the forfeiture is not excessive under the Eighth Amendment. Accordingly, the amount of money judgment forfeiture the Government seeks against Defendant Julie Coscia will not be reduced.

### 3. Anthony Coscia

The Government's judgment of forfeiture holds Defendants Anthony and Julie Coscia equally responsible for the proceeds attributable to Cigarette Girl. Accordingly, the Government also seeks a forfeiture in the amount of $762,495.22 against Anthony Coscia. (Doc. # 378-1). While this amount is not grossly disproportionate as it relates to Julie Coscia, it *is* grossly disproportionate as to Anthony Coscia.

Much of the Eighth Amendment analysis is the same for Defendant Anthony Coscia as it was for Julie Coscia, and need not be repeated. However, the analysis differs with respect to Anthony Coscia's role in the conspiracy and the Guideline range for the sentence and fine imposed upon him. This Court previously found that Anthony Coscia played a minor role in the conspiracy, and was less culpable than his wife, Julie Coscia. (Doc. # 514, p. 14). Defendant Anthony Coscia received a two-point mitigating role reduction because "the evidence did not show that he exercised any decision-making authority, was greatly involved in his wife's business, or that he profited substantially from his conduct." *Id.* This reduced Anthony Coscia's Guideline range down to forty-six to fifty-seven months. *Id.* Because Anthony Coscia played a minor role in the conspiracy, did not realize a great profit, and his Guideline sentence reflects a lesser degree of culpability as compared to the other defendants, the money judgment forfeiture the Government seeks violates the Excessive Fines Clause. Therefore, the amount of the money judgment forfeiture must be reduced so that it is not grossly disproportionate to Anthony Coscia's offense. For these reasons, the Court finds that a money judgment forfeiture in the amount of $251,623.42, a 67% reduction from the requested amount, is appropriate for Anthony Coscia.

    **4.**   **Christina Carman**

The Government seeks a money judgment forfeiture against Defendant Carman in the amount of $34,934,514.12. (Doc. # 378-1). This amount is excessive under the Eighth Amendment, and must be reduced to reflect the gravity of Carman's offense.

Under the Guidelines, Carman faced a sentence of fifty-seven to seventy-one months, and a fine of $10,000 to $2,500,000. (Doc. # 547). Thus, the forfeiture the Government seeks is several times greater than the maximum fine under the Guidelines.

As to her role in the conspiracy, Carman was not an "organizer" or "leader," but she was more than a "minor participant." (Doc. # 514, pp. 11-13). While Carman played an active role in the conspiracy, she was much less involved than her husband John Maddux, who was the most culpable of the charged defendants. This Court previously found that Carman "basically did what [Maddux] told her," and acted as an "extension of him." *Id.* Thus, the forfeiture the Government seeks as to Carman is grossly disproportionate to her offense. For these reasons, the Court chooses to reduce the money judgment forfeiture for Defendant Carman by one-half, to $17,467,257.06.

### III.   CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

1.   The Government's Motion for Preliminary Judgment of Forfeiture (Docs. # 378 and 402) is **granted in part and denied in part**. The money judgment forfeiture requests shall be reduced as set forth herein.

2.   **Amended Judgments** for defendants Michael Smith, Julie and Anthony Coscia, and Christina Carman, reflecting the money judgment forfeitures set forth herein, **shall be prepared and filed**.

3.   The Clerk shall forward a copy of this Order, along with the Amended Judgments to be filed, to the Sixth Circuit Court of Appeals.

This 17th day of January, 2017.



Signed By:
*David L. Bunning*   DB
United States District Judge

K:\DATA\ORDERS\Ashland Criminal\2014\Maddux orders\14-20 MOO re $$ Judgment Forfeiture.wpd