UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CRIMINAL ACTION NO. 14-20-DLB-EBA

UNITED STATES OF AMERICA                                                     PLAINTIFF

v.                   **MEMORANDUM OPINION AND ORDER**

JOHN W. MADDUX, JR.                                          DEFENDANT

In re Claims of Judith Thieben, Christina Carman
Darrell White and Eric Brandt

\*\*   \*\*   \*\*   \*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court upon the United States' Motion for Summary Judgment and Partial Final Order of Forfeiture [Doc. # 756]. The matter has been fully briefed [Doc. # 769 and 771]. For the reasons set forth herein, the Court finds that the United States is entitled to judgment as a matter of law.

I.

Beginning in 2008, John W. Maddux. Jr., along with his wife, Christina Carman, Glen Herndon and other individuals, conspired to purchase untaxed cigarettes from domestic and international suppliers and resell the cigarettes, without tax, to customers within the Unites States, via phone and/or mail order. *See generally,* Indictment, Doc. # 1. On November 13, 2014, Maddux, Carman and nine others were indicted for various offenses relating to their criminal enterprise.

1

In January of 2016, Carman was convicted by a jury of one count of conspiracy to commit wire and mail fraud in violation of 18 U.S.C. § 1349.

On May 6, 2016, Maddux pled guilty to multiple conspiracies to commit wire and mail fraud in violation of 18 U.S.C. § 1349, multiple conspiracies to commit money laundering in violation of 18 U.S.C. § 1956, violations of the Prevent All Cigarette Trafficking ("PACT") ACT, 18 U.S.C. § 371 and making false statements in violation of 18 U.S.C. § 1001.

As part of his plea, and pursuant to the forfeiture allegation in the Indictment, Maddux agreed to forfeit five parcels of real property, several vehicles, numerous bank accounts, as well currency, firearms, collectible coins and jewelry seized by the United States during its investigation.  Maddux agreed that these various items constituted proceeds traceable to or derived from the offenses and/or involved in or facilitating money laundering violations, pursuant to pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1) [Doc. # 510].  An Agreed Preliminary Order of Forfeiture as to Specific Property was entered by this Court on August 30, 2016. [Doc. # 535].  In the Order, the Court explicitly held that the United States had established the requisite nexus between the property listed above and the offenses.

Thereafter, pursuant to 21 U.S.C. § 853(n), several individuals filed claims to the forfeited property, including Judith Thieben, Maddux's mother and the partner of deceased, unindicted co-conspirator Glen Herndon, Christina Carman, Maddux's wife and co-Defendant, Darrell White and Eric Brandt, friends of Maddux. [Docs. # 570, 580-582].

Discovery followed.[1] Documents were exchanged, and the claimants and ATF Special Agent Joseph Stansfeld were deposed.[2] The United States now seeks judgment as a matter of law and entry of an order of forfeiture.

## II.

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party opposing a properly supported summary judgment motion " 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (internal quotation omitted). In considering the motion, the court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. *Id.*

The Court is not obligated to scour the entire record in an effort to establish a lack of material facts. *Guarino v. Brookfield Township Trs.,* 980 F.2d 399, 404 (6th Cir.1992). Rather, the burden is on the non-moving party to designate specific facts in dispute. *Anderson,* 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v.*

---

[1] Prior to discovery, Thieben and Carman filed dispositive motions as to their claims in the forfeited property. [Docs. # 613 and 630]. Carman also filed a Motion seeking to compel the United States to respond to written discovery and to produce ATF Special Agent Thomas Lesnak for deposition. [Doc. # 709]. Magistrate Judge Edward Atkins overruled the motion to compel and recommended that the dispositive motions be overruled as premature. [Doc. # 721]. Thereafter objections and briefs were filed. [Docs. # 724 and 728]. This Court adopted the Report and Recommendation and overruled Thieben and Carman's Motions for Summary Judgment without prejudice. [Doc. # 738].

[2] Copies of the relevant documents and the transcripts of the depositions were filed in the record the United States as attachments to their dispositive motion.

*Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  The non-moving party must "present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989).

### III.

The Court's Preliminary Order of Forfeiture conclusively establishes that the property currently at issue constitutes or was derived from proceeds of Maddux, Carman and Herndon's scheme. Before the Court are the "ancillary proceedings."[3]

The government owns the forfeitable property from the moment of the commission of the offenses: "All right, title and interest" in forfeitable property "vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c).  This is referred to as the "relation-back clause."  "After the commission of the criminal acts, title to forfeitable property, by operation of the relation-back clause, actually belongs to the government." *United States v. Harris,* 246 F.3d 566, 575 (6th Cir.2001).

The statute provides only two exceptions to this relation-back principle: if, at an ancillary proceeding, the claimant shows that his or her interest in the property was superior to the defendant's (now government's) interest or that he or she was a bona fide purchaser for value. 21 U.S.C. § 853(n)(6).

A bona fide purchaser for value, "BFP", is a third party who acquires a legal interest in property for value after the acts giving rise to the forfeiture have occurred and

---

[3] After the court issues a preliminary order of forfeiture, if no third party requests an ancillary proceeding, "the preliminary order becomes the final order of forfeiture." Fed.R.Crim.P. 32.2(c)(2). However, if others make claim to the forfeited property, so-called "ancillary proceedings" begin.

4

who had no reason to believe that the property was subject to forfeiture. *United states v. Huntington National Bank*, 682 F.3d 429, 433 (6th Cir. 2012)(internal citations ommitted).

In an ancillary proceeding, the claimant bears the burden of proof under. 21 U.S.C. § 853(n)(6).  *See also*, United *States v. Coffman*, 612 Fed.App'x. 278 (6th Cir. 2015) *cert.denied*, 136 S.Ct. 491 (2015).

Ancillary proceedings are not an arena in which to relitigate whether the subject property is subject to forfeiture and is, by virtue of the forfeiture statutes, owned by the United States.  That has been established. The **only** issue in these ancillary proceedings is whether Thieben, Carman, White and Brandt have proven their interest in the claimed property that is superior to the government's or whether they can establish that they were bona fide purchasers for value of the property without cause to believe the property was subject to forfeiture.  21 U.S.C. § 853(n)(6).  For the reasons that follow, they have not done so.

### A.  Judith Thieben

Judith Thieben, Maddux's mother, met Glen Herndon in 2000.  [Deposition of Judith Thieben, Doc. # 756-2, p. 105].  Although never married, they lived together for many years. Herndon treated Thieben's family as his own.  *Id.*  Herndon gave Thieben a 25% share of his businesses – ASR, Inc., YKTR, Inc. and ESR II, Inc., the very companies utilized in the trafficking of cigarettes.  Thieban desceribes her role in these companies as "passive." *Id.* at p. 12.  According to Thieban, Herndon told her the companies were legal. She claims to have had no reason to think otherwise. *Id.* at 26.  Herndon died in 2014.

5

In her Verified Petition, she asserts rights to the following:

1) Three pieces of real property in Pinetop, Arizona (3637 Deep Forest Drive, 3769 Deep Forest Drive, and 3548 & 3588 Cary Court);
2) Three vehicles (two 2010 Cadillac Escalades and one 2005 Lincoln Aviator);
3) $175,540.00 total in currency seized from 3769 Deep Forest Drive;
4) Fifty percent of the collectible coins seized from 3769 Deep Forest Drive;
5) Certain items of jewelry seized from 3769 Deep Forest Drive;
6) Fifty percent of the funds seized from four Kentucky Farmers Bank accounts in the name of ESRII, Inc. (accounts ending x3536, x3544, x3560, and x3552);
7) Fifty percent of the funds seized from three Wells Fargo Bank accounts in the name of ASR Inc. (accounts ending x1352, x2539, and x0379);
8) Funds seized from Wells Fargo Bank account ending x7378 in the name of Judith Thieben and John Maddux;
9) Funds seized from Wells Fargo Bank account ending x2083 in the name of Glenn Herndon;
10) Sixty-six percent of funds seized from two Edward Jones accounts in the name of Glenn Herndon and John Maddux, Jr. (accounts ending x5415 and x5514); and
11) Funds seized from two Edward Jones accounts in the name of Judith Thieben (accounts ending x5316 and x6413).

[Doc. # 570].  Discovery was conducted as to each item claimed by Thieban.

### i.    Real Estate

Thieben testified that the two properties on Deep Forest Drive in Pinetop, Arizona were owned by both herself and Herndon as joint tenants with rights of survivorship. [Doc. # 756-2, pp. 41-43]. She did not provide any personal funds for the purchase of either parcel or could not identify any funds, other than those derived from the cigarette trafficking, which were used. *Id.* at pp.38-40, 44-45. As such, she has not proven that she has superior title to these properties or that she is a BFP.

The properties on Cary Court were originally purchased by Thieben and Herndon for Maddux and Carman in 2010 and ultimately transferred to Thieben and Maddux in a Joint Tenancy Deed, dated November 20, 2012.  In her deposition, she testified that she has never lived at this residence. *Id.* at pp. 47-49. When asked regarding the funds for its

6

purchase, she did not dispute that it was purchased with funds transferred from a YKTR account. *Id.* As such, she has not proven that she has superior title to these properties or that she is a BFP.

### ii.     Cars

Thieben asserts ownership rights to three cars which were forfeited by Maddux: two 2010 Cadillac Escalades and a 2005 Lincoln Aviator. In her deposition, she testified that both Cadillacs were purchased by Maddux. *Id.* at pp. 51-52. She was not involved in the purchase. *Id.* One of the Cadillacs was driven by Maddux and Thieben does not know why her name is on its title. *Id.* She explained that the second Cadillac was given to her by Maddux as a gift. *Id.* at pp.55-57. As for the Lincoln Aviator, it was titled in her name as well as YKTR. Although she did drive it, she does not know the origin of the funds used for its purchase. *Id.* at pp. 62-65. Thieben's only argument in support of her claim to all three cars is that her name appears on their titles. This alone is not sufficient to prove her interest in these ancillary proceedings.

### iii.    Cash

Thieben claims all of the cash seized from the 3769 Deep Forest Drive, a total of $175,540.00. However, she testified that the cash belonged to Herndon and Maddux and she has no knowledge as to its source. *Id.* at pp. 114-117. Indeed, in her deposition she stated that the cash was not hers and she does not keep cash in the house. *Id.* As such, she has not proven that she has superior title to this cash.

### iv.    Coins

Thieben claims half of the collectible coins seized from 3769 Deep Forest Drive. However, in her deposition she conceded that she does not collect coins and that the coins at issue belonged to Maddux and Herndon. *Id.* at p. 117.  Moreover, she did not dispute that the coins were purchased with the proceeds from the cigarette trafficking enterprise. *Id.*  As such, she has not proven that she has superior title to these properties or that she is a BFP.

### v.    Jewelry

Thieben claims "certain items" of jewelry which were seized from the Deep Forest residence.  However, she testified that none of her own jewelry was seized. *Id.* at 118. Moreover, when shown photos of the forfeited jewelry, she did not recognize a single item. *Id.* at 133.  Clearly, she has failed to carry her burden of proving either superior title or that she was a BFP.

### vi.    Accounts

Thieben claims half of the cash seized from the four ESRII accounts at Kentucky Farmers Bank and three ASR Inc. accounts at Wells Fargo.  However, she testified that she contributed none of her own personal funds to these accounts. *Id*. at pp. 68-79. She identified these accounts as Maddux's and could not dispute that the funds therein were from any source other than cigarette trafficking. *Id.*  Her only basis for seeking fifty percent is her ownership in these companies – 25% respectively. However, her own testimony belies her claim. She has repeatedly stated that her interest in these

8

companies was passive and refuted any involvement in their operation. Indeed, her role in these businesses appears to be that of "strawman." [4] She has not proven otherwise.

Thieben claims all the contents of two accounts at Wells Fargo, one in her name and Maddux', the other in Herndon's name. In her deposition, she testified that she does not recall when either account was opened. *Id.* at pp. 92-93 and 96-97. She claims the first account was not funded by the proceeds of cigarette sales but, rather, from funds in a "Scottsdale account." *Id*. at p. 93. However, she could provide no specifics as to the Scottsdale account or the source of its funds. Indeed, she went so far as to concede that she "never did anything with Scottsdale." *Id.* at p. 94. Again, the onus is upon Thieban to present affirmative evidence of either her superior title or her status as a BFP. She has not.

Thieben claims sixty-six percent of the contents from two accounts at Edward Jones, both in the names of Maddux and Herndon. Yet she testified that she had no involvement with either account or no knowledge as to the source of the funds in them. According to her, the accounts were "all between [Maddux] and [Herndon]." *Id.* at p. 99. She has failed to carry her burden of proving either superior title or that she was a BFP.

As for the accounts in her name at Edward Jones, she admitted during her deposition that she did not know the source of the funds therein. *Id.*at pp.103-104. She

---

[4] "[B]are legal title, in the absence of assertions of dominion, control or some other indicia of ownership of or interest in the seized property, is insufficient to confer standing to challenge a forfeiture." *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 498 (6th Cir. 1998). "This is so because 'people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name.... In short, courts look behind the formal title to determine whether the record title owner is a 'strawman' set up to conceal the financial affairs of illegal dealings of someone else.' " *Moore v. United States*, 2017 WL 4150711, *3 (E.D. Mich. 2017) *citing US v. Coffman,* 612 Fed. Appx. at 286.

9

cannot dispute that the accounts were funded by proceeds from the cigarette scheme. Nor could she establish that she ever personally deposited funds into either account. Aside from her name on the accounts, she has no evidence that she had any real interest in them. Her name alone is insufficient to prove superior title.

### vii. Thieben's response

Thieben devotes much of her response to the United States' motion questioning the nexus between the property and the criminal conduct. However, as discussed *supra*, that issue has been decided. Even if she could properly present that argument at this juncture, she cannot adequately support it. Again and again, in her testimony, she had no basis upon which to dispute that the property which she claims was anything but proceeds from the criminal enterprise. Her lack of participation in the crime is not a defense to forfeiture.

Thieben also asserts that she should be permitted to relitigate her claim to the forfeited property in a civil proceeding and that this Court should "reactivate" the civil forfeiture case the United States filed in 2013. She suggests that her lack of involvement in the criminal enterprise affords her the right to a civil forfeiture proceeding, rather than a criminal one. While the law allows for a civil proceeding, it does mandate the same. 18 U.S.C. § 983(f).

Finally, Thieben maintains that the United States should be estopped from suggesting that she "should have known" that the property she claims was "subject to forfeiture." She contends that in the criminal case against Maddux, Carman and others, the United States took the position that Thieben was not involved in the cigarette businesses and had no knowledge of the same. Therefore, Thieben concludes that the

10

United States cannot, now, in these ancillary proceedings, maintain that she "should have known." In response, the United States explains that the two position are not "clearly inconsistent", as required in order for estoppel to be apply, but, rather, are distinct. *See generally*, *Audio Technica, Inc. v. United States*, 2020 WL 3481702 (6th Cir., June 26, 2020). Specifically, the United States points out that they do not contend that Thieben actually knew about the illegal activities of Maddux and Herndon but that she had constructive knowledge based upon her awareness of large amounts of cash being generated. In her deposition, Thieben testified that she asked many times about the legitimacy of the businesses "[b]cause there was so much money." [Doc. # 756-2, pp. 25-27 and 129]. The United States suggests that Thieben may have turned a blind eye; she testified that "she didn't really care" about the finances because "she was able to do what [she] wanted to do." *Id.*

It appears that both Thieben and the United States are conflating the exceptions to the relation-back clause; she must establish that she has superior title to the subject property **or** was a bona fide purchaser for value. She has done neither. Moreover, even if Thieben were relying on the BFP exception, her assertion fails at the first instance because there is no evidence that purchased, i.e. gave consideration, for any of the items she claims. At best, some may be considered gifts which fall outside the definition of BFP.[5]

---

[5] "A person who is a mere volunteer, having acquired title by gift, inheritance, or some kindred mode, cannot come within the scope of the term bona fide purchaser. To enable the grantee to claim protection as a bona fide purchaser he must have parted with something possessing an actual value, capable of being estimated in money, or he must on the faith of the purchase have changed, to his detriment, some legal position that he before had occupied." *Lykins v. McGrath*, 184 U.S. 169, 173 (1902).

11

## B. Christina Carman

In 2002, while studying at Marshall University in Huntington, West Virginia Carman met Maddux. [Deposition of Christina Carman, Doc. # 756-4, p.10]. She met Herndon in 2003. *Id*. at p. 15. She worked for Herndon in his cigarette businesses, assisting with processing orders. *Id*. After she graduated in 2010, she continued to work for Herndon. Although she does not recall the specific years, at some point after 2003, Herndon gave her a 50% interest in YKTR as well as in ASR. *Id*. at pp. 30-31.

Following her trial, she stipulated to the forfeiture of her interest in two vehicles but not to any other property she claimed to have owned on her own behalf and as a shareholder of ESR II and ASR, Inc.

In her Verified Petition, Carman claims the following property:

1) 112 Bellefonte Avenue in Ashland, Kentucky;
2) Two vehicles outright (1971 Chevrolet Corvette and 1966 Chevrolet Corvette) and fifty percent of three vehicles (2003 Hummer H2, 1969 Ford Mustang Shelby, and 2010 Chevrolet Corvette ZR1);
3) Fifty percent of the collectible coins seized from 3769 Deep Forest Drive;
4) Certain items of jewelry seized from 3769 Deep Forest Drive;
5) Fifty percent of the funds seized from four Kentucky Farmers Bank accounts in the name of ESRII, Inc. (accounts ending x3536, x3544, x3560, and x3552);
6) Fifty percent of the funds seized from three Kentucky Farmers Bank accounts or certificates of deposit in the name of John Maddux and Christina Carman (accounts/CDs ending x7527, x8712, and x9387;
7) Fifty percent of the funds seized from three Wells Fargo Bank accounts in the name of ASR Inc. (accounts ending x1352, x2539, and x0379);
8) Fifty percent of Wells Fargo Bank account ending x5952 in the name of John Maddux and Christina Carman; and
9) Fifty percent of Edward Jones accounting ending x0119 in the name of John Maddux and Christina Carman.

[Doc. # 580]. Discovery was conducted as to each item claimed by Carman.

### i.     Real Estate

The property at 112 Bellefonte Avenue in Ashland, Kentucky was transferred to Carman by deed on April 25, 2008 for $150,000. [Deed, Doc. # 580-1]. She testified that payments for this property, where she resided, came from her income at YKTR. [Doc. # 756-4, p.56]. In her response to the United States motion, however, she stated that she "could have used" money from an alleged inheritance from her Grandmother to pay "some portion" of the mortgage on the property. Yet, her deposition testimony in this regard was vague and inconsistent with her other statements that money from her Grandmother was not an inheritance but given to her while her Grandmother was living. Moreover, she offered no supporting documentation of an inheritance or gift. Therefore, she has not effectively refuted that this property was procured by anything other than proceeds from her criminal enterprise. Nor has she presented evidence of superior title or that was a BFP.

### ii.    Cars

All five vehicles claimed by Carman were paid for by money Carman received from the cigarette companies. *Id.* at pp. 67-70, 76-77, 81-83 and 86-90]. Four of the five were insured by Maddux and the policies identify him as the insured and principal operator. [Doc. # 756-12]. This would suggest that the cars, at least four of them are Maddux's, not Carman's and that all of the cars represent proceeds of their criminal enterprise. Carman has not presented any evidence to support her claim of superior title. Instead, she states that the source of funds for the cars is "an area of genuine factual dispute." This bald assertion, with no evidence, does not satisfy her burden of proof in these proceedings.

### iii. Coins

Carman claims fifty percent of the coins seized. In her deposition, she explained that she been collecting since she was a child and that her parents have her personal coin collection. [Doc. # 756-4 at p. 135]. As for the coins seized, she stated those were purchased with proceeds from the cigarette scheme. *Id.* at pp. 135-138. She testified that the coins were either gifts from Herndon or purchased by her online or at pawn shops or from individual coin brokers. *Id.* However, she did not explain why her title would be superior to that of Herndon. Nor did she introduce documentation regarding the purchase of the coins. As such, her claim fails.

### iv. Jewelry

Carman claims certain items of jewelry seized from 3769 Deep Forest Drive, a property in which she did not reside. She claims that some of the jewelry was given to her by her Grandmother and some purchased using her income from cigarette trafficking. *Id*. at, pp. 142-146. She maintains that the jewelry she bought with illegal proceeds was sold and the only jewelry she claims now is that given to her by her Grandmother. *Id.* However, aside from her contention that she inherited the jewelry, she has not provided any specific testimony or documentation in that regard. Notably, the United States requested a copy of her Grandmother's will during the discovery phase of these proceedings; Carman did not produce any such document. Carman has not proven superior title or that she was a BFP.

### v. Accounts

Carman claims half of the cash seized from the four ESRII accounts at Kentucky Farmers Bank and three ASR Inc. accounts at Wells Fargo. She testified that her claims are based upon her ownership intertest in each company. *Id.* at pp. 103-110, 111-119. As discussed *supra*, one's name on an account is not enough to divest the United States of its title in the forfeited property. Moreover, Carman could not dispute that these accounts were the repositories for cigarette sales.

With regard to the three joint accounts she had with Maddux at Kentucky Farmers Bank, she admitted those were funded with the profits of their criminal scheme. *Id*. at p. 121.

Pertaining to their joint account at Edward Jones, Carman testified that the account was transferred from a Scottsdale account and that the source of the funds were profits from YKTR and "probably some ATF money too." *Id.* at pp. 132-133. Again, she failed to offer any specifics regarding the possibility of ATF funds comingled with YKTR funds. As such, she has not carried her burden of creating a genuine issue of material fact as to the source of the funds in this account.

As for Maddux's Well Fargo account, on which Carman is listed as "Secondary Joint Owner," she testified that the money in this account was from the sale of two cars in 2013 and a "mix of" ATF money and profits from the cigarette scheme. *Id.* at pp. 130-131. Again, she failed to offer any specifics regarding the possibility of ATF funds comingled with YKTR funds. As such, she has not carried her burden of creating a genuine issue of material fact as to the source of the funds in this account.

### vi. Carman's response

Like Thieben, Carman's main opposition to the United States' dispositive motion is to question the validity of the forfeiture itself. Yet, that has been decided. Carman's burden in these proceedings is to prove superior title in the property she claims or that she obtained the property as a BFP. She has not proven neither. At most, she suggests "possibilities" and "probabilities." Yet, these musings on metaphysics do not further her cause.

### C. Darrell White

White testified that he has known Maddux since high school, and they were "best friends for 40 years." [Deposition of Darrell White, Doc. # 756-23, p.13]. In his Verified Petition, White claims the following property:

(1) Five firearms seized from 3769 Deep Forest Drive (three Colt python revolvers and two Smith & Wesson revolvers);
(2) 2008 Skeeter 21i Bass Boat with Hull No. STE17322G708; and
(3) 2008 Boat Trailer with Hull No. 1L8FAHPG08A049017.

[Doc. # 582]. Discovery was conducted as to each item claimed by White.

### i. Firearms

In his written discovery responses, White claimed that he purchased the three Colt revolvers from individuals in the Phoenix area through ads in the newspaper, that he paid cash for them, that he does not have any documents memorializing the sales, and that he did not register them in any state. [Doc. # 756- 22]. With regard to the two Smith & Wesson revolvers, White testified that he purchased those during an online auction for $1,390.95 and claimed that was supported by an entry on his January 2012 Visa statement, showing a payment in that amount to Sohn & Associates on December 8, 2011. [Doc. # 756-23, pp. 10-12]. Yet National Tracing Center Reports show that the two

16

Smith & Wessons were purchased by Maddux in 2011 and that the three revolvers were purchased by others, one being reported stolen in Texas in 1982. [Doc. # 756-2]. White had no evidence with which to rebut this report.

Notably, the guns were seized from Maddux's residence. White stated that he kept the guns at Maddux's residence because he and Maddux would shoot on weekends. *Id*. at pp. 25-26. He explained that he stored the guns at Maddux's home in a blue, fire department bag. *Id.* at p. 29. However, at the time they were seized, two of the guns were in Maddux's bedroom, in his nightstand, loaded with six rounds. [Declaration of Agent Scott Strayer, Docket No. 756-29]. The others were in two closets at Maddux's residence, but not in a blue bag. *Id.*

White's support of his ownership of these firearms is flimsy at best and insufficient to satisfy his burden of proof.

## ii.  Boat and Trailer

White contends that he was a BFP of the boat and trailer and owns one-half interest in each. In support of his claim, he offers a handwritten document which he claims is a receipt, written by Maddux confirming that White paid him $14,500 for one-half of the boat in 2009. [Doc. # 582-2]. Yet in his deposition, White could not recall when he acquired the boat and trailer. [Doc. # 756-23, pp. 8-10]. He testified that Maddux paid $29,000 for the boat and that he paid Maddux $14,500 for his share. *Id.* at pp. 23-24. Yet the purchase price was $39,500. White had no explanation for the discrepancy. *Id.* at pp. 19-20.

Moreover, the boat is registered in Kentucky. [Doc. # 756-24]. White lives in Arizona. Most notably, it is Maddux's name on the title – not White's. *Id.* Incredibly, White

17

testified that he has never been aboard the boat. [Doc. # 756-23, p.8]. In fact, he had not seen the boat until Maddux brought to Arizona sometime in 2011, two years after he allegedly purchased one-half of it. *Id.*

The only thing supporting White's claim is the so-called "receipt," the validity of which is belied by the facts and documents. White has not proven that he was a BFP for the boat and trailer.

### D.  Eric John Brandt

Brandt filed a Verified Petition claiming a 1969 Chevrolet Camaro RS Passenger with VIN 124379N648279.  Brandt has not responded to the United States' motion and is therefore deemed to have abandoned his claim. *See Benge v. Johnson*, 474 F.3d 236, 245 (6th Cir. 2007) (issues alluded to in a perfunctory manner, without argument or development, are considered to be abandoned and waived).

### IV.

Both the rules for summary judgment and ancillary forfeiture proceedings place the burden upon Thieben, Carman, White and Brandt to present affirmative evidence in support of their clams. Fed.R.Civ.Proc.56 and 21 U.S.C. § 853(n)(6). While Rule 56 requires this Court to view the facts in the light most favorable to Thieban, Carman, White and Brandt, there must be something concrete upon which to shine that light. Vague assertions and conclusory statements do not pass muster for either Rule 56 or § 853(n)(6). The claimants have not established that there are disputed, material facts creating a genuine issue that needs to be resolved by the trier of fact.  In the oft quoted words of Judge Bertelsman, the parties opposing summary judgment must "put up or shut

up." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). Thieben, Carman, White and Brandt have not "put up."

Accordingly, for the reasons stated herein,

**IT IS HEREBY ORDERED** United States' Motion for Summary Judgment and Partial Final Order of Forfeiture [Doc. # 756] be **SUSTAINED**.

**IT IS FURTHER ORDERED** that the United States shall file a proposed Partial Final Order of Forfeiture consistent with this Order **within twenty (20) days from the entry of this Order**.

This 3rd day of August, 2020.

Signed By:
*David L. Bunning* DB
United States District Judge